1

2

3

4

5

6

7

8

9              IN THE UNITED STATES DISTRICT COURT

10           FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

12   CHANEL, INC,                        No C 05-03464 VRW

13        Plaintiff,

                                          ORDER
14           v

15   BRANDON DOAN, et al

16        Defendants.
     _____
17

18        On August 26, 2005, Chanel, Inc filed this action

19   alleging that defendants had committed, *inter alia*, trademark

20   counterfeiting, infringement and false designation of origin.  Doc

21   #1.  Before the court is plaintiff's unopposed motion for default

22   judgment against defendants, as well as plaintiff's application for

23   statutory damages, permanent injunction and attorney fees.  Doc

24   #15-1.  For the reasons that follow, the court GRANTS plaintiff's

25   motion for default judgment, GRANTS statutory damages and

26   injunctive relief and GRANTS an award of attorney fees and

27   expenses.

28   //

United States District Court

For the Northern District of California

I

Plaintiff, a well known fashion house, alleges that defendants violated its trademark rights through its businesses, Cizi's Handbags, Cizicollection.com and Cizinguyen.  Doc #1. Although served with summons and complaint on September 4, 2005 (Doc ##4-6), defendants never filed an answer or responsive pleading.  Upon plaintiff's motion, the clerk entered default on December 21, 2005, in accordance with FRCP 55(a).  Doc #9.

Subsequently, plaintiff submitted its motion for default judgment on June 2, 2006.  Doc #15-1.  Defendant Eddie Doan filed a notice of change of address on July 13, 2006, but none of the defendants filed an opposition or a statement of non-opposition as required by Civil Local Rule 7-3.  Doc #17.  On July 25, 2006, the court ordered defendants on or before August 17, 2006, to show cause why judgment should not be entered in favor of plaintiff for failure to respond to plaintiff's complaint.  Doc #18.  No response was received, although defendant Eddie Doan submitted a letter to the court on August 24, 2006, nearly one year after being served. Doc #20.

Plaintiff requests that default judgment be entered and that defendants pay $127,701.00 in statutory damages pursuant to the Lanham Act, 15 USC § 1117© (2006), jointly and severally.  Doc #15-1.  Plaintiff further requests a permanent injunction barring defendants from marketing or selling any goods that infringe on plaintiff's marks.  Id.  Finally, plaintiff seeks to recover all fees, including attorney fees, investigative fees and costs.  Id.

The following factual summary comes from plaintiff's complaint, declarations and supporting exhibits.  Doc ##1, 15-2 to

2

United States District Court
For the Northern District of California

15-9.   Plaintiff is a corporation that manufactures and distributes a variety of luxury carrying apparel, including handbags.   Doc #1 ¶ 2.   Plaintiff owns six federally registered trademarks that it uses to market and sell its handbags.   Doc #1 ¶ 7.

Defendants sell handbags containing these trademarks via the internet and a San Jose storefront.   Doc #1 ¶¶ 3, 4, 16. Despite lacking permission to use these marks, defendants promote their products both as genuine Chanel merchandise and as "look alike" products.   Doc #1 ¶ 9; Doc ##15-5 to 15-6.

Plaintiff hired a private investigator, aptly named Robert Holmes, to inquire into defendants' operations.   Doc #15-7 ¶¶ 1, 3.   Holmes purchased a counterfeit Chanel handbag from Cizicollection.com for $115.00.   Doc #15-7 ¶ 6.   This website, Holmes discovered, was registered to "Cizi Collection" with Brandon Doan listed as an administrative contact.   Doc #15-7, ¶ 4. Defendants' website promoted a panoply of handbags bearing the Chanel mark, some labeled "authentic" and others described as "look alike."   Doc #15-5.   Assertedly authentic Chanel handbags were listed for prices as high as $1280.00, whereas "look alike" handbags ranged in price from $89.00 to $145.00.   Id.   Defendants also listed their products on an auction website, characterizing them as "100% Real Authentic."   Doc #15-6.

The handbag delivered to Holmes bore the return address of 5089 Eppling Lane, San Jose, CA 95111 (Doc #15-7 ¶ 8) — the same address at which defendants were served with the summons and complaint and at which defendant Eddie Doan registered with the court on July 13, 2006.   Doc ##4, 5, 6, 17.   Plaintiff's employee, Adrienne Hahn Sisbarro, inspected this handbag and determined that

**United States District Court**
For the Northern District of California

1   it contained counterfeit Chanel marks and was a replica.  Doc #15-
2   3.

3          Plaintiff then hired Suzi Vasylionis to investigate the
4   storefront location of "Cizi's Handbags," which she visited on
5   March 29, 2005.  Doc #15-4 ¶¶ 1, 3, 4.  Vasylionis observed
6   approximately 10 handbags bearing Chanel marks priced between
7   $70.00 and $135.00.  Doc #15-4 ¶ 5.  A female clerk who identified
8   herself as "Cizi" told Vasylionis that the handbags were "copies"
9   and stated that she could sell such handbags in wholesale
10  quantities.  Id.  Vasylionis purchased one of these handbags for
11  $65.00.  Id at ¶ 6.

12         In June of 2005, plaintiff prepared a cease and desist
13  letter and hired Robert Hargrove to deliver it to defendants at the
14  San Jose storefront location of "Cizi's Handbags."  Doc #15-9 ¶¶ 3,
15  5.  Defendants Hau Nguyen and Brandon Doan identified themselves as
16  co-owners of the retail store and as husband and wife.  Doc #15-9
17  ¶¶5, 6.  Nguyen and Doan refused to surrender the counterfeit
18  merchandise to Hargrove but destroyed some of the handbags in his
19  presence.  Doc #15-9 ¶ 7.

20         At this point, plaintiff sought the assistance of the
21  court, filing a complaint alleging that defendants' actions
22  constitute trademark infringement and counterfeiting in violation
23  of the Lanham Act and the California Business and Professions Code.
24  Doc #1.

25  //

26  //

27  //

28  //

**4**

United States District Court
For the Northern District of California

II

The court first addresses plaintiff's motion for default judgment.  "Courts have inherent equitable powers to dismiss actions or enter default judgments for failure to prosecute, contempt of court, or abusive litigation practices."  Televideo Systems, Inc v Heidenthal, 826 F2d 915, 917 (9th Cir 1987) (citing Roadway Express, Inc v Piper, 447 US 752, 764 (1980); Link v Wabash RR, 370 US 626, 632 (1962); United States v Moss-American, Inc, 78 FRD 214, 216 (ED Wis 1978)).

"The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."  Televideo Systems, 826 F2d at 917-18 (quoting Geddes v United Financial Group, 559 F2d 557, 560 (9th Cir 1977)).  "Upon entry of default judgment, facts alleged to establish liability are binding upon the defaulting party, and those matters may not be relitigated on appeal."  Danning v Lavine, 572 F2d 1386, 1388 (9th Cir 1978)(citations omitted).  Following default judgment, a defendant is deemed to have admitted the well-pleaded allegations in the complaint.  Benny v Pipes, 799 F2d 489, 495 (9th Cir 1986), amended, 807 F2d 1514 (9th Cir 1987) (citing Thomson v Wooster, 114 US 104, 114 (1884); In re Visioneering Construction, 661 F2d 119, 124 (9th Cir 1981)).

Defendants responded to neither plaintiff's complaint, the clerk's entry of default, the court's order to show cause nor plaintiff's motion for default judgment.  All the while, defendants sought settlement with plaintiff, filed a notice of change of address with the court and sent a letter to the court.  By refusing to defend this suit, defendants leave no other remedy to plaintiff

United States District Court

For the Northern District of California

1  than default judgment.  Plaintiff's motion for default judgment is

2  therefore GRANTED.

3

4                                  A

5       Because default judgment is appropriate, the court takes

6  the well-pleaded allegations in the complaint as true and facts

7  establishing liability are binding upon defendants.  <u>Danning</u>, 572

8  F2d at 1388; <u>Geddes</u>, 559 F2d at 560.  Plaintiff's complaint asserts

9  two causes of action for alleged violations of the Lanham Act, 15

10 USC §§ 1114 and 1125(a).  Plaintiff's complaint also advances state

11 causes of action under Cal Bus & Prof Code §§ 14330, 14335, 14340

12 and 17200 et seq.

13      15 USC § 1114(1)(a) makes liable "[a]ny person who shall,

14 without consent of the registrant use in commerce any reproduction,

15 counterfeit, [or] copy * * * of a registered mark in connection

16 with the sale, offering for sale, distribution, or advertising of

17 any goods or services on or in connection with which such use is

18 likely to cause confusion * * *."  Similarly, § 1125(a)(1) makes

19 liable "[a]ny person who, in connection with any goods or services

20 * * * uses in commerce any word, term, name, symbol or device * * *

21 which is likely to cause confusion * * * as to the affiliation * *

22 * of such person with another person * * * or in commercial

23 advertising or promotion, misrepresents the nature * * * of his or

24 her or another person's goods* * *."

25      Plaintiff's state law claims are subject to the same

26 analysis as the federal Lanham Act claims.  <u>Cleary v News Corp</u>,30

27 F3d 1255, 1263 (9th Cir 1994); <u>Panavision Int'l v Toeppen</u>, 141 F3d

28 1316, 1324 (9th Cir 1998); <u>Entrepreneur Media, Inc v Smith</u>, 279 F3d

United States District Court
For the Northern District of California

1   1135, 1153 (9th Cir 2002).  Hence, if the factual allegations of

2   the complaint are sufficient to establish liability under the

3   Lanham Act, they are also sufficient to establish liability

4   pursuant to the state claims.

5           The plaintiff alleges in the complaint that defendants

6   knowingly sell and distribute counterfeit and infringing handbags

7   and use the Chanel marks to advertise these counterfeit goods in a

8   manner that is likely to cause consumer confusion.  Doc #1 ¶¶ 17,

9   29, 30, 32, 37.  Accordingly, the factual allegations of

10  plaintiff's complaint, admitted by defendants through default,

11  establish that defendants violated the plaintiff's rights under

12  both the Lanham Act and state law claims.

13

14                                  B

15          Having established defendants' liability, the court turns

16  to the relief requested by plaintiff.  The scope of damages

17  available to plaintiff under each alleged violation is essentially

18  the same.  As plaintiff acknowledges in its application for default

19  judgment, it is not entitled to double recovery; it may only

20  recover under one claim.  The plaintiff elects to recover damages

21  available for defendants' violation of 15 USC § 1114.

22          The remedies available to a prevailing plaintiff under

23  § 1114 of the Lanham Act include those listed under § 1117 (a-c).

24  Under § 1117(a), a registered mark holder may recover the

25  defendant's profits, registrant/plaintiff's damages and the costs

26  of the action, subject to the principles of equity.  Section

27  1117(b) requires the court to treble the damages assessed under

28  subsection (a) if the defendant "intentionally us[es] a mark or

                                    **7**

**United States District Court**
For the Northern District of California

1  designation, knowing such mark * * * is a counterfeit mark * * *,

2  in connection with the sale, offering for sale, or distribution of

3  goods or services." Section 1117© permits a plaintiff to elect

4  statutory damages in "case[s] involving the use of a counterfeit

5  mark" in connection with the sale of goods.

6       Here, plaintiff may recover statutory damages pursuant to

7  § 1117©, as defendants marketed and sold counterfeits of

8  plaintiff's registered marks. Statutory damages are most

9  appropriate if, as here, data regarding the business practices and

10 profits of the defendants are unavailable due to lack of

11 cooperation on the part of defendants. Jackson v Sturkie, 255 F

12 Supp 2d 1096, 1101 (ND Cal 2003). In enacting § 1117©, Congress

13 acknowledged that statutory damages are "both necessary and

14 appropriate in light of the deception routinely practiced by

15 counterfeiters." S Rep No 177, 104th Cong, 1st Sess, 7 (1995).

16      Unlike the remainder of the allegations in the complaint,

17 those regarding damages are not controlling. Geddes, 559 F Supp 2d

18 at 560. Hence, it is the province of this court to determine the

19 appropriate amount of statutory damages. Section 1117(c)(1)

20 provides for damages of "not less than $500 or more than $100,000

21 per counterfeit mark per type of goods or services sold * * * as

22 the court considers just." Yet, upon a finding that the use of the

23 counterfeit was willful, § 1117(c)(2) permits a maximum of

24 $1,000,000 per counterfeit mark per type of violating good sold.

25      "Willful infringement carries a connotation of deliberate

26 intent to deceive." Lindy Pen Co, Inc v Bic Pen Corp, 982 F2d

27 1400, 1406 (9th Cir 1993). Whether defendants acted willfully or

28 with bad faith "require[s] a connection between [the] defendant[s']

United States District Court
For the Northern District of California

1   awareness of its competitor and its actions at those competitors'

2   expense."  Id.

3           Here, the declarations and exhibits attached to

4   plaintiff's application for default judgment contain considerable

5   evidence of willfulness.  Printouts from defendants' website show

6   merchandise listed as both authentic and "look alike" Chanel bags.

7   Doc #15-5.  Defendants' statements on an auction website declared

8   the counterfeit bags were "100% Real Authentic."  Doc #15-6.

9   Furthermore, a woman identifying herself as "Cizi" told Vasylionis

10  that the handbags for sale in the San Jose storefront were

11  "copies."  Finally, on its website, defendants priced handbags

12  falsely labeled as authentic for approximately ten times the price

13  of those listed as "look alike," implicitly recognizing that

14  plaintiff's marks command higher prices.  This conduct plainly

15  constitutes a "deliberate attempt to deceive," entitling plaintiff

16  to recover up to the maximum of $1,000,000 per counterfeit mark for

17  type of good sold or offered as provided under § 1117(c)(2).

18          To calculate statutory damages under the Lanham Act, many

19  district courts turn to the analysis developed for a similar

20  provision within the Copyright Act.  Sara Lee Corp v Bags of New

21  York, Inc, 36 F Supp 2d 161, 167 (SD New York 1999); Louis Vuitton

22  v Veit, 211 F Supp 2d 567, 583 (ED Pennsylvania 2002); Tommy

23  Hilfiger v Goody's, 2003 US Dist LEXIS 8788, 74 (ND Georgia 2003);

24  Phillip Morris USA, Inc v Shalabi, 352 F Supp 2d 1067, 1076 (CD Cal

25  2004).  Under the Copyright Act, the court has wide discretion in

26  calculating statutory damages, "constrained only by the specified

27  maxima and minima."  Harris v Emus Records Corp, 734 F2d 1329, 1335

28  (9th Cir 1984) (citing LA Westermann Co v Dispatch Printing Co, 249

**United States District Court**
For the Northern District of California

US 100, 39 (1919)).  Plaintiff may recover statutory damages without offering evidence of plaintiff's actual damages or the defendants' profits because of the dual "compensatory and punitive purposes" of statutory damages.  Los Angeles News Service v Reuters Television Int'l Ltd, 149 F3d 987, 996 (9th Cir 1998).  Furthermore, "[t]he Supreme Court has stated that even for uninjurious and unprofitable invasions of copyright the court may, if it deems it just, impose a liability within the statutory limits to sanction and vindicate the statutory policy of discouraging infringement."  Peer Int'l Corp v Pausa Records Inc, 909 F2d 1332, 1337 (9th Cir 1990) (quoting FW Woolworth Co v Contemporary Art, Inc, 344 US 228, 232 (1952)) (internal quotation marks omitted).

Although the statutory damages need not reflect the defendants' unlawfully obtained profits, some district courts use § 1117(b) as a guide for setting damages under § 1117©.  Sara Lee, 36 F Supp 2d at 170; Louis Vuitton, 211 F Supp 2d at 583.  In doing so, courts both counteract the profitability of counterfeiting and execute the punitive purposes of the statute.  Los Angeles News Service, 149 F 3d at 996; Louis Vuitton, 211 F Supp 2d at 583.

The lack of discovery in this case leaves a paucity of data concerning the extent of defendants' profits.  Plaintiff contends that it is reasonable to assume that defendants earned as much as $42,567 in the time between registering their domain name and receiving plaintiff's complaint.  Doc #15 ¶ III©.  Unfortunately, plaintiff fails to demonstrate how it reached this number other than offering a blanket reference to the data contained in the exhibits and declarations.

//

10

1    Based on the price of the handbags sold to plaintiff, as
2  well as the prices listed on defendants' website, the court
3  estimates that defendants' handbags averaged a price of $293.  A
4  conservative estimate of 10 bags sold per week amounts to $2930 in
5  weekly revenue, which, multiplied across the relevant damages
6  period (approximately 42 weeks), yields $123,060 in estimated gross
7  proceeds from selling infringing handbags.  Under a 50% profit
8  margin, as recommended by plaintiff, defendants would have garnered
9  $61,530 during the relevant period, which exceeds plaintiff's
10 calculation of defendants' profit ($42,567).  Accordingly, the
11 court finds that plaintiff's calculation amounts to a reasonable
12 estimation.

13    Trebling plaintiff's calculation, pursuant to the court's
14 previous finding of willfulness, yields a total of $127,701 in
15 damages.  Plaintiff's request for an award of this amount appears
16 to be fair, especially considering that the plaintiff pled factual
17 allegations, admitted by default, that would permit the court to
18 award up to $1,000,000 per infringement.  Accordingly, the court
19 GRANTS plaintiff's requested damage award in the amount of
20 $127,701.00.

21    Section 1116(a) confers to the court power to grant
22 injunctions "according to the principles of equity" in order to
23 prevent violation of the rights of a registered trademark holder.
24 Plaintiff contends that a permanent injunction is warranted due to
25 the strong demand for Chanel products, defendants' disregard of
26 plaintiff's trademark rights and defendants' failure to respond to
27 the complaint.  Indeed, defendants' willful violations, admitted by
28 default, and their lack of participation in this litigation give

the court little assurance that defendants' infringing activities
will cease.  Accordingly, the court GRANTS plaintiff's request for
permanent injunctive relief.

C

Finally, the court takes up plaintiff's request for
attorney and investigator fees.  Although 15 USC § 1117(c) does not
mention attorney fees, § 1117(b) does.  Many district courts have
determined, as has this court, that it is appropriate to award fees
and costs to a prevailing plaintiff under subsection (b) when
damages are assessed under subsection (c).  <u>Tommy Hilfiger</u>, 2003 US
Dist Lexis at 112; <u>Louis Vuitton</u>, 211 F Supp 2d at 585-86; <u>Sara
Lee</u>, 36 F Supp 2d at 170-71.  To determine a reasonable attorney
fee award under § 1117(a), the court must find an objective source
for setting counsel's hourly rates and determine whether the hours
expended by counsel are concordant with the requirements of the
litigation at hand.

Plaintiff's counsel Stephen M Gaffigan submits in his
declaration that he worked 14.28 hours on this case, bills $350 per
hour for intellectual property litigation, has over 11 years of
trademark litigation experience and practices in Fort Lauderdale,
FL.  Doc #15-8 (Gaffigan Decl ¶¶ 1,3).  Plaintiff's counsel Stephen
Scherzer submits in his declaration that he spent 35 hours on this
case at a billing rate of $175 per hour and has been an attorney
for over 30 years in Santa Ana, CA.  Doc #15-2 (Scherzer Decl ¶¶
4,6,7).  Each of the three private investigators assert fees as
well, which total $2,310.25.  Doc #15-7 (Holmes Decl ¶ 10); Doc
#15-4 (Vasylionis Decl ¶ 8); Doc #15-3 (Sisbarro Decl ¶ 16).

12

**United States District Court**

For the Northern District of California

1      It is the practice of the undersigned judge to rely on

2  official data to determine appropriate hourly rates.  One reliable

3  official source for rates that vary by experience levels is the

4  <u>Laffey</u> matrix used in the District of Columbia.  See http://www.

5  usdoj.gov/usao/dc/Divisions/Civil_Division/Laffey_Matrix_6.html

6  (citing <u>Laffey v Northwest Airlines, Inc</u>, 572 F Supp 354 (D DC

7  1983), aff'd in part, rev'd in part on other grounds, 746 F2d 4 (DC

8  Cir 1984)).

9      Under the 2006-2007 <u>Laffey</u> matrix, attorneys with 20 or

10  more years of experience bill $425/hour and attorneys with 11-19

11  years of experience bill $375/hour.  These figures are, however,

12  tailored for the District of Columbia, whereas Gaffigan's offices

13  are located in Fort Lauderdale, Florida and Scherzer's are located

14  in Santa Ana, CA.  The court will adjust these figures accordingly.

15  The locality pay differentials within the federal courts -- which,

16  like law firms, employ lawyers and legal support staff --

17  approximate these differences.  See http://jnet.ao.dcn/Human_

18  Resources/Pay_Tables/2007_Pay_Tables/Judiciary_Salary_Plan_

19  Locality_Rate_Pay_Tables_2007.html.  The Washington-Baltimore area

20  has an +18.59% locality pay differential; the Miami-Fort

21  Lauderdale-Miami Beach area has a +18.30% locality pay

22  differential; the Los Angeles-Long Beach-Riverside area has a

23  +24.03% locality pay differential.  Thus, adjusting the Laffey

24  matrix figures downward by 0.3% will yield rates appropriate for

25  Fort Lauderdale.[1]  Adjusting the <u>Laffey</u> matrix figures upward by

26

27

[1](118.59 - 118.3) / 118.3 = .00245, or about .3%.

13

United States District Court

For the Northern District of California

1    approximately 5% will yield rates appropriate for Santa Ana.[2]

2        Applying this adjustment and rounding, the court obtains
3    the following rates:  Attorneys with 11-19 years of experience
4    located in Fort Lauderdale, FL bill $376/hour; attorneys with 20 or
5    more years of experience located in Santa Ana, CA bill $446/hour.
6    Therefore, both Gaffigan and Scherzer have charged reasonable
7    hourly rates, lower than would otherwise be available under the
8    Laffey matrix.

9        The court next evaluates whether the number of hours
10   expended by counsel are appropriate to the requirements of the
11   particular case.  Plaintiff's counsel gathered investigative
12   information, prepared documents and pleadings and discussed
13   settlement with defendants.  Doc #15-8.  Counsel expended a total
14   of 49.28 hours accomplishing these tasks, which the court finds
15   reasonable.  Accordingly, the court awards attorney fees in the
16   amount of $11,125.

17       Plaintiff also requests the payment of investigative fees
18   to Holmes, Vasylionis and Hargrove.  Not having a suitable
19   substitute for the investigators' billing rates, the court will
20   accept the asserted values in the declarations.  See In Re HPL
21   Technologies, Inc, 366 F Supp 2d 912 (ND Cal 2005).  The court
22   awards the plaintiff's reasonable investigative fees in the amount
23   of $2310.25.

24       Finally, plaintiff requests recovery of court costs in
25   the amount of $463.  Scherzer asserts in his declaration that $463
26   in costs were incurred for filing fees and service of process.  Doc

27   _____

28       [2](124.03 - 118.59) / 118.59 = 0.04587, or about 5%.

14

#15-8.   The plaintiff's application for default judgment includes a breakdown of these costs, Doc #15 ¶ F, which the court finds reasonable.   Accordingly, the court awards plaintiff its costs in the amount of $463.

In sum, the court awards plaintiff $141,599.25, consisting of $127,701 in statutory damages, $11,588 in attorney fees and costs and $2310.25 in investigative costs.

III

For the foregoing reasons, the court GRANTS plaintiff's motion for default judgment and ENJOINS defendants from infringing any of plaintiff's trademarks.   The clerk is DIRECTED to enter judgment for plaintiff and against defendants in the amount of $141,599.25, close the file and terminate all motions.

IT IS SO ORDERED.

_____
VAUGHN R WALKER
United States District Judge